UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

GREGORY MIDGYETT,

               Petitioner,               Case Number 17-13846
                                                               Honorable David M. Lawson

v.

SHANE JACKSON,

               Respondent.
_____/

## **OPINION AND ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS**

A dispute over a parking space on a Detroit residential street led to the shooting death of Ronnie Davis. The shooter, petitioner Gregory Midgyett, alleged at trial that he acted in self-defense. The jury convicted him of second-degree murder and firearms offenses. Midgyett challenges those convictions in a petition for a writ of habeas corpus filed under 28 U.S.C. § 2254, in which he alleges that he was denied the right to present a defense when the trial court refused to allow him to offer evidence that Davis was a local drug dealer. He also contends that his trial lawyer did not perform up to constitutional standards. Because neither claim has merit, the Court will deny the petition.

I.

Ronnie Davis and Gregory Midgyett lived on opposite sides of Seyburn Street in Detroit. The houses in the neighborhood did not have driveways. Residents "took different places" on the street and "just said that was their parking spot."

On July 21, 2013, Davis returned from the store and waited in his car for his usual parking spot to open up. Midgyett's father's vehicle was parked in front of Midgyett's house. Midgyett's truck was also parked on the street. Anthony Hines was inside his parked vehicle when he noticed

Midgyett walk to his truck. Midgyett then walked down to Hines' car to speak with him, commenting that he was worried that someone had done something to his truck, because the dome light was on and the door was ajar. Midgyett referred to Davis's house and told Hines that he "hope[d] those people in that house right there didn't bother [his] truck."

While the two men were talking, Hines noticed Davis's car backing up toward them. Midgyett walked over to the passenger window of the car. Hines heard Midgyett say, "What the "F" you want?" Hines testified that Midgyett pulled out a pistol; Davis responded, "that's all you got[?]" Hines then heard a pop and saw a flash, at which point Hines drove off. Davis drove in the same direction, hit Hines' vehicle, causing Hines to spin around and collide with multiple parked cars, including Midgyett's truck. After the shooting and the accident, Hines got out of his car. Hines testified that Midgyett worked for 10 minutes under the hood of his truck, went into his house, came back out, and with the help of another car, towed his truck away and left the area.

Keith Richardson also was at the scene that night waiting for Davis to park his car. After Davis backed up his car, Richardson heard a loud crash, noticed another car "spinning out," and then saw Davis driving past him at a fast speed, before crashing. Richardson jumped out of his car, saw that Davis was unconscious with blood on his chest, and called 911. Richardson did not see a weapon near Davis and testified that he did not know Davis to carry a weapon.

The police found a .22 caliber casing inside of Davis' car, but no other firearm evidence was recovered.

Midgyett testified at trial and admitted to shooting Davis, but he insisted that he did so in self-defense. Midgyett came out of his house to check on his truck, saw Hines in his car down the street, and walked toward him. While talking with Hines, Midgyett noticed a blue car (Davis's) backing up towards them. Midgyett testified that the person in the car "started talking all crazy,

like you know, man, move your truck." Midgyett told Davis he did not have to move. The two men began arguing. Midgyett testified that Davis pointed a weapon at the petitioner. Midgyett testified that he "was afraid of being shot." He pulled out his .22 caliber handgun and shot the man. Midgyett testified he felt that his life was threatened by Davis. About 30 minutes later, Midgyett's friend arrived to tow his truck. Midgyett then left the scene.

Midgyett was arrested over a year later. During the intervening period, Midgyett said that he "snuck over [to his house] occasionally" to see his father, but never returned to live there. He "didn't want [his] daddy's house to be shot up, because that neighborhood is very rough over there."

The jury rejected Midgyett's self-defense argument and convicted him of second-degree murder, possession of a firearm by a felon, carrying a concealed weapon, and possession of a firearm during the commission of a felony, second offense. His convictions were affirmed on appeal. *People v. Midgyett*, No. 326323, 2016 WL 3749414 (Mich. Ct. App. July 12, 2016); *lv. den.* 500 Mich. 926, 888 N.W.2d 93 (2017) (table).

He filed a petition for a writ of habeas corpus raising the following grounds:

I. Petitioner was denied his federal constitutional right to present a defense when the trial court abused its discretion in excluding relevant evidence of Mr. Davis' reputation for violence.

II. Petitioner's federal constitutional right to the effective assistance of counsel was violated where trial counsel failed to move for jury instructions on the lesser offense of voluntary manslaughter.

III. Petitioner was denied his constitutionally effective trial counsel rights when counsel failed to subpoena for trial a witness that petitioner explicitly demanded.

Pet. at 6-7, ECF No. 1, PageID.6-7.

The warden filed an answer to the petition raising the defense of procedural default. The "procedural default" argument is a reference to the rule that the petitioner did not preserve properly some of his claims in state court, and the state court's ruling on that basis is an adequate and independent ground for the denial of relief. *Coleman v. Thompson*, 501 U.S. 722, 750 (1991). The Court finds it unnecessary to address the procedural question. It is not a jurisdictional bar to review of the merits, *Howard v. Bouchard*, 405 F.3d 459, 476 (6th Cir. 2005), and "federal courts are not required to address a procedural-default issue before deciding against the petitioner on the merits," *Hudson v. Jones*, 351 F.3d 212, 215 (6th Cir. 2003) (citing *Lambrix v. Singletary*, 520 U.S. 518, 525 (1997)). The procedural defense will not affect the outcome of this case, and it is more efficient to proceed directly to the merits.

II.

Certain provisions of the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), Pub. L. No. 104-132, 110 Stat. 1214 (Apr. 24, 1996), which govern this case, "circumscribe[d]" the standard of review federal courts must apply when considering an application for a writ of habeas corpus raising constitutional claims, including claims of ineffective assistance of counsel. *See Wiggins v. Smith*, 539 U.S. 510, 520 (2003). A federal court may grant relief only if the state court's adjudication "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or if the adjudication "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(1)-(2).

"Clearly established Federal law for purposes of § 2254(d)(1) includes only the holdings, as opposed to the *dicta*, of [the Supreme] Court's decisions." *White v. Woodall*, 572 U.S. 415, 419

(2014) (quotation marks and citations omitted). "As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington v. Richter*, 562 U.S. 86, 103 (2011). The distinction between mere error and an objectively unreasonable application of Supreme Court precedent creates a substantially higher threshold for obtaining relief than *de novo* review. Mere error by the state court will not justify issuance of the writ; rather, the state court's application of federal law "must have been objectively unreasonable." *Wiggins*, 539 U.S. at 520-21 (quoting *Williams v. Taylor*, 529 U.S. 362, 409 (2000) (quotation marks omitted)). The AEDPA imposes a highly deferential standard for evaluating state-court rulings and demands that state-court decisions be "given the benefit of the doubt." *Renico v. Lett*, 559 U.S. 766, 773 (2010).

A.

At trial, Midgyett attempted to testify that he had heard from someone that Davis was "gonna be selling drugs" at the house where he was staying. The trial judge sustained the prosecutor's objection to the testimony on the ground that the evidence was irrelevant. The judge also prevented Midgyett from answering a question regarding whether he had seen "any particular or unusual activity at [Davis'] house." The judge agreed that this evidence also was irrelevant. Midgyett now argues that exclusion of that evidence denied him the right to present a defense.

The Michigan Court of Appeals rejected this issue on direct appeal. It acknowledged that under Michigan law, a defendant in a homicide prosecution may offer evidence of the victim's character trait of aggression to prove that the victim was the first aggressor. *People v. Midgyett*, No. 326323, 2016 WL 3749414, at *2 (Mich. Ct. App. July 12, 2016) (citing Mich. R. Evid.

404(a)(2). The court held, however, that Midgyett's testimony about Davis's drug dealing did not tend to show that character trait and therefore was not relevant to self-defense. The court also determined that the evidence of Davis being involved in the drug trade was offered to explain why Midgyett did not return to the neighborhood very much after the shooting, which likewise was not relevant to the defense of self-defense. *Ibid.* The court also determined that the evidence would not have made a difference anyway even if it had been received. *Id.* at *3.

A person accused of a crime has a constitutional right to present witnesses to establish a defense. This right is a fundamental element of the due process of law. *Washington v. Texas*, 388 U.S. 14, 19 (1967); *see also Crane v. Kentucky*, 476 U.S. 683, 690 (1986) ("whether rooted directly in the Due Process Clause of the Fourteenth Amendment, or in the Compulsory Process or Confrontation clauses of the Sixth Amendment, the Constitution guarantees criminal defendants 'a meaningful opportunity to present a complete defense'") (citations omitted). However, an accused in a criminal case does not have an unfettered right to offer evidence that is incompetent, privileged, or otherwise inadmissible under the standard rules of evidence. *Montana v. Egelhoff*, 518 U.S. 37, 42 (1996). Rulings that exclude evidence from criminal trials do not violate the right to present a defense unless they are "'arbitrary' or 'disproportionate to the purposes they are designed to serve.'" *United States v. Scheffer*, 523 U.S. 303, 308 (1998) (quoting *Rock v. Arkansas*, 483 U.S. 44, 56 (1987)). Moreover, under the standard of review for habeas cases as enunciated in section 2254(d)(1), it is not enough for a habeas petitioner to show that the state trial court's decision to exclude potentially helpful defense evidence was erroneous or incorrect. Instead, a habeas petitioner must show that the state trial court's decision to exclude the evidence was "an objectively unreasonable application of clearly established Supreme Court precedent." *See Rockwell v. Yukins*, 341 F. 3d at 511-12.

The state courts' rulings that the evidence was inadmissible reasonably applied state evidence rules. A colorable argument could be made, perhaps, that individuals involved in the drug trade carry firearms, and therefore it was more likely that Davis did so at the time of the shooting. But Midgyett never made that argument, either in the state courts or here. And even if he had, the state court's rejection of the evidence with such a minimal connection to the defense theory certainly would be a debatable point subject to "fairminded disagreement." *Harrington*, 562 U.S. at 103. Federal courts will not disturb a state court's exclusion of evidence on the ground of relevancy "unless the relevance and probative value of such evidence is so apparent and great that excluding the evidence denies the petitioner the due process of law." *Jones v. Smith,* 244 F. Supp. 2d 801, 814 (E.D. Mich. 2003) (citations omitted). That is not the case here. The exclusion of the evidence "was [not] so prejudicial as to deprive the defendant of a fundamentally fair trial." *Ibid.*

B.

Midgyett also argues that he was denied the effective assistance of counsel because his lawyer did not ask the court to instruct the jury on the lesser included offense of voluntary manslaughter, and because his lawyer did not subpoena a witness that might have been able to shed light on whether Davis was armed.

The Michigan Court of Appeals viewed the first argument as a criticism of trial counsel's decision to go all in on the defense of self-defense, which the court found to be a "legitimate all-or-nothing trial strategy." *Midgyett*, 2016 WL 3749414, at *6. It rejected the second argument because Midgyett failed to develop it by identifying the witness or making a record on what she might have actually said. *Ibid.*

The Sixth Amendment to the United States Constitution guarantees a criminal defendant the right to the effective assistance of counsel. An ineffective assistance of counsel claim has two components. A petitioner must show that counsel's performance was deficient, and that deficiency prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). An attorney's performance meets the first element when "counsel's representation [falls] below an objective standard of reasonableness." *Id*. at 688. The petitioner must show "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id*. at 687. "Judicial scrutiny of counsel's performance must be highly deferential." *Id*. at 689. The Supreme Court has "declined to articulate specific guidelines for appropriate attorney conduct and instead [has] emphasized that the proper measure of attorney performance remains simply reasonableness under prevailing professional norms." *Wiggins*, 539 U.S. at 521 (quoting *Strickland*, 466 U.S. at 688) (quotation marks omitted).

An attorney's deficient performance is prejudicial if "counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Strickland*, 466 U.S. at 687. The petitioner must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id*. at 694. Unless a defendant demonstrates both deficient performance and prejudice, "it cannot be said that the conviction resulted from a breakdown in the adversary process that renders the result unreliable." *Id*. at 687.

Success on ineffective assistance of counsel claims is relatively rare, because the *Strickland* standard is "'difficult to meet.'" *White*, 572 U.S. at 419 (quoting *Metrish v. Lancaster*, 569 U.S. 351, 357-58 (2013)). And under AEDPA, obtaining relief under *Strickland* is even more difficult because "[t]he standards created by *Strickland* and § 2254(d) are both highly deferential and when

the two apply in tandem, review is doubly so." *Richter*, 562 U.S. at 105 (internal citations and quotation marks omitted). This doubly-deferential standard requires the Court to give "both the state court and the defense attorney the benefit of the doubt." *Burt v. Titlow*, 571 U.S. 12, 15 (2013). "[T]he question is not whether counsel's actions were reasonable," but whether "there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Richter*, 562 U.S. at 105.

The state court of appeals was reluctant to look behind trial counsel's strategic decision not to ask for a manslaughter instruction. That holding did not contravene or unreasonably apply Supreme Court precedent. Trial counsel may have reasonably determined that asking the jury to compromise on a lesser offense would weaken the defense of self-defense. Moreover, there was no evidence that would have supported a heat-of-passion manslaughter defense theory, and years earlier the Michigan Supreme Court had held that the doctrine of imperfect self-defense is not available as "a freestanding defense that mitigates a murder to manslaughter because it was not recognized as such under the common law at the time the Legislature codified the crimes of murder and manslaughter." *People v. Reese*, 491 Mich. 127, 150, 815 N.W.2d 85, 98 (2012). In fact, the court of appeals noted that "[t]he voluntary manslaughter instruction was potentially detrimental to defendant's self-defense theory." *Midgyett*, 2016 WL 3749414, at *6.

Finally, it is well established that a decision not to request jury instructions on all possible lesser offenses may well be proper trial strategy. *See Tinsley v. Million*, 399 F.3d 796, 808 (6th Cir. 2005). Counsel's decision to pursue an "all or nothing" defense in the hopes of obtaining a complete acquittal on the charges was a reasonable defense decision. *See Kelly v. Lazaroff*, 846 F.3d 819, 830 (6th Cir. 2017). Trial counsel may have decided not to argue inconsistent theories of defense and to seek an outright acquittal on a self-defense theory, which was a reasonable choice

that the state courts properly should not second-guess. *See Lewis v. Russell*, 42 F. App'x 809, 810-11 (6th Cir. 2002).

The argument that trial counsel was ineffective by failing to subpoena a witness for trial was not well developed in the state court, nor is it more developed here. Midgyett presented that argument to the state court of appeals in a *pro se* brief that he was allowed to file after his court-appointed appellate counsel filed the formal brief on appeal. Midgyett argues that an unnamed witness was at the scene and was putting pressure on Davis's wound. He contends that the witness could have contradicted Mr. Richardson's testimony that Davis did not have a gun in his car.

But Midgyett has not told us who this person was, and he has not furnished a statement — much less an affidavit — detailing what she might have said if called as a witness. Conclusory allegations of this sort, not backed up with evidence, are not enough to show that defense counsel failed to perform adequately by not calling the witness. *Workman v. Bell*, 178 F.3d 759, 771 (6th Cir. 1998). And without any proof of what the witness would have said at trial, Midgyett is unable to establish that he was prejudiced by his counsel's failure to investigate or to call this unnamed woman as a witness at trial. *Clark v. Waller*, 490 F.3d 551, 557 (6th Cir. 2007).

Midgyett has not satisfied either component of *Strickland* for an ineffective assistance of counsel claim. He is not entitled to a writ of habeas corpus on this claim.

III.

None of the petitioner's claims presents a basis to issue a writ of habeas corpus under 28 U.S.C. § 2254(d). The state courts' decisions in this case were not contrary to federal law, an unreasonable application of federal law, or an unreasonable determination of the facts. The petitioner has not established that he is presently in custody in violation of the Constitution or laws of the United States.

Accordingly, it is **ORDERED** that the petition for a writ of habeas corpus is **DENIED**.

s/David M. Lawson  
DAVID M. LAWSON  
United States District Judge

Dated: June 8, 2021